UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LARRY L. MORRIS, JR.,**

**Plaintiff,**

-vs-                                                    Case No.  6:10-cv-233-Orl-19GJK

**CITY OF ORLANDO, FLORIDA and
OFFICER FINLEY JOHNSON, in his official
and individual capacities,**

**Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Dismiss Complaint by Defendant City of Orlando (Doc. No. 29, filed Oct. 1, 2010);

2.      Objection to Defendant City of Orlando's Motion to Dismiss Complaint by Plaintiff Larry L. Morris, Jr. (Doc. No. 31, filed Oct. 15, 2010);

3.      Motion to Dismiss Complaint by Defendant Finley Johnson (Doc. No. 32, filed Oct. 20, 2010); and

4.      Objection to Defendant Finley Johnson's Motion to Dismiss Complaint by Plaintiff Larry L. Morris, Jr. (Doc. No. 34, filed Nov. 3, 2010).

**Background**

**I.  Plaintiff's Allegations**[1]

This case concerns the arrest of Larry Morris, Jr. at the Greyhound bus terminal in Orlando, Florida, on September 26, 2008.  (Doc. No. 1 ¶¶ 2-3.)  Morris maintains that his baggage was stolen while he fell asleep in the bus terminal during a five-hour layover.  (*Id.* ¶¶ 3-4, 6.)  Morris allegedly contacted Jonathan Owens, the bus terminal security guard, to report his missing baggage.  (*Id.* ¶¶ 4-5.)  According to Morris, he and Owens had a disagreement leading Owens to call the police.  (*Id.* ¶ 5.)

Officer Finley Johnson of the Orlando Police Department responded to the bus terminal.  (*Id.* ¶ 6.)  Morris maintains that despite producing his bus ticket and baggage claim stub, Johnson refused to acknowledge Morris' claim for stolen baggage.  (*Id.*)  Johnson instructed Morris to sit down and then spoke to Owens.  (*Id.* ¶ 7.)  Morris contends that he "attempted to wait his turn to tell his side of the story."  (*Id.*)  However, upon learning that he was being cited for trespass, Morris "attempted to produce evidence of his right to be [in the bus terminal]."  (*Id.*)  Morris further maintains that Owens "exaggerated the details of the situation" when speaking to Johnson, prompting Morris to "interject[]" in the conversation between Owens and Johnson.  (*Id.* ¶ 8.)  Johnson allegedly ignored Morris.  (*Id.*)  Upon realizing that he would be stuck in Orlando with no money, no baggage, and a trespass citation, Morris "stood up and began to plea[d] again."  (*Id.* ¶ 9.)  Johnson then approached Morris and told him that he was under arrest.  (*Id.*)  Morris concedes that he "pulled back" from Johnson, "asked 'for what,'" and then permitted Johnson to arrest him.  (*Id.*)

---

[1] The facts presented in this Order are derived from the allegations of the Complaint.  These facts are included only to provide context and should not be construed as findings of fact.

Morris was arrested for disorderly conduct and resisting arrest without violence, and the charges were later dropped. (*Id.* ¶ 10, at 7.) Morris contends that he did not curse, threaten, or obstruct Officer Johnson and that he was not intoxicated, incapacitated, disorderly, or a threat to himself or others. (*Id.* ¶ 11.) However, according to Johnson's Arrest Affidavit ("Arrest Affidavit") attached to the Complaint, Morris "seem[ed] intoxicated and very uncooperative." (*Id.* at 8.) Johnson further reported that Morris "began yelling . . . and bec[ame] very disruptive" while sitting down, became "more aggressive" when he stood up, and refused to sit and calm down when requested to do so. (*Id.*)

## II. Procedural History

On February 8, 2010, Morris filed a nine-count Complaint alleging: (1) violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983 against Johnson; (2) violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 against Johnson; (3) violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 against Johnson; (4) negligence for failure to uphold Florida law against Johnson and the City of Orlando; (5) negligence for failure to train against Johnson and the City of Orlando; (6) intentional infliction of emotional distress against Johnson and the City of Orlando; (7) false imprisonment against Johnson and the City of Orlando; (8) battery against Johnson and the City of Orlando; (9) malicious prosecution against Johnson and the City of Orlando. (Doc. No. 1.)

Johnson and the City of Orlando now move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 29, 32.) Morris opposes both Motions to Dismiss. (Doc. Nos. 31, 34.)

## Standard of Review

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible.  *Id.* at 1950-51.

**Analysis**

**I.  Counts I - II: Section 1983 Claims for Violation of First and Fourth Amendment Rights against Johnson**

In Count I of the Complaint, Morris claims that Johnson violated his First Amendment right to free speech by arresting him in retaliation for "attempt[ing] to plead his case."  (Doc. No. 1 ¶ 12.) In Count II of the Complaint, Morris asserts that Johnson violated his Fourth Amendment rights "by taking him into custody and holding him there against his will."  (Doc. No. 1 ¶ 13.)

Johnson argues that these claims should be dismissed because Morris has pled facts negating the causes of action.  (Doc. No. 32 at 3.)  In view of Morris' allegations that he disobeyed Johnson's instructions to sit down and that he "pulled back" when Johnson attempted to arrest him, Johnson contends that he cannot be liable for arresting Morris.  (*Id.*)  Morris maintains in opposition that he was exercising his First Amendment rights by standing up and explaining his version of the events and that he lawfully resisted Johnson's arrest.  (Doc. No. 31 at 2.)

The Court construes Johnson's arguments as assertions of qualified immunity from Morris' Section 1983 claims that Johnson arrested him in violation of his First and Fourth Amendment Rights.[2]  "In order to receive qualified immunity, [a] public official 'must first prove that he was

---

[2]  The First and Fourth Amendments are incorporated and applied to state actors such as Officer Johnson by the Fourteenth Amendment.  *See Bates v. Harvey*, 518 F.3d 1233, 1243 (11th (continued...)

acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).  Johnson's arrest of Morris was within his discretionary authority as a police officer for the City of Orlando.  *See id.* (finding that a warrantless arrest was within a police officer's discretionary authority).

Having found that Johnson was acting within his discretionary authority, the burden shifts to Morris to plead facts plausibly establishing that (1) his constitutional rights were violated; and (2) the rights violated were "clearly established."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).  "[L]aw can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)).

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment."  *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).  "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants *could have believed* that probable cause existed to arrest' the plaintiff[]."  *Id.* (quoting *Von Stein*, 904 F.2d at 579) (emphasis added).  "Whether an officer possesses probable cause or arguable probable cause depends on the

---

(...continued)
Cir. 2008) (Fourth Amendment); *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (First Amendment).

elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735 (citations omitted).

Morris was arrested for violating the Florida disorderly conduct statute, (Doc. No. 1 at 9), which states as follows:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree . . . .

Fla. Stat. § 877.03.

Words alone do not establish probable cause or arguable probable cause to arrest for disorderly conduct unless the words are "'fighting words' or words like shouts of 'fire' in a crowded theatre." *State v. Saunders*, 339 So. 2d 641, 644 (Fla. 1976); *see also Davis v. Williams*, 451 F.3d 759, 766 (11th Cir. 2006) ("[P]robable cause for purposes of § 877.03 cannot be based on 'mere words.'") (citations omitted). Because Morris allegedly did not threaten Johnson, (Doc. No. 1 ¶ 11), Morris' words alone do not establish arguable probable cause to arrest him for disorderly conduct.

Notwithstanding any particular words uttered, statements and actions "invad[ing] the right of others to pursue their lawful activities" constitute arguable probable cause to arrest for disorderly conduct. *White v. State*, 330 So. 2d 3, 7 (Fla. 1976); *compare id.* at 5-6 (determining that shouting in police station loudly enough to affect the functioning of the station may constitute disorderly conduct regardless of the words uttered), *with Saunders*, 339 So. 2d at 641, 644 (finding that selling newspapers by confronting people on a city street and appearing to "hassle" them did not amount to disorderly conduct). "[W]hat constitutes legally proscribed disorderly conduct is subject to great subjective interpretation of specific facts – for example, the words used, the tone used, the decibels

used, and the reaction of onlookers . . . ." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1999).  The subjective and fact-intensive nature of this inquiry justifies finding arguable probable cause and awarding qualified immunity in close cases.  *See id.* ("Given that what constitutes legally proscribed disorderly conduct is subject to great subjective interpretation of specific facts[,] . . . we are constrained to conclude that a reasonable officer in the same circumstances and possessing the same knowledge as the officers in this case could have reasonably believed that probable cause existed to arrest [the plaintiff] for disorderly conduct.").  Thus, the Eleventh Circuit in *Gold* found arguable probable cause and awarded qualified immunity to officers who arrested a bank patron for disorderly conduct simply because the bank patron "twice used profanities in a loud voice, in a public place, and in the presence of others" in criticizing an officer's failure to enforce handicapped parking space rules in a crowded parking lot.  *Id.* at 1444, 1446.

Despite the fact-intensive nature of disorderly conduct and the resulting breadth of qualified immunity for disorderly conduct arrests, it is clear that the mere failure to follow police officers' instructions does not establish arguable probable cause to arrest for disorderly conduct.  In *Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006), the defendant police officers lacked arguable probable cause to arrest the plaintiff for disorderly conduct following an incident where the plaintiff refused to follow the officers' multiple orders.  *Id.* at 767.  The plaintiff in *Davis*, upon noticing flashing police lights outside his home, walked down his driveway to approach two officers who, unbeknownst to him, were conducting a traffic stop.  *Id.* at 763.  The officers told the plaintiff multiple times to leave the scene.  *Id.*  The first time, the plaintiff responded to the officers "I live here," and he did not retreat.  *Id.*  After being told to leave the scene a second time, the plaintiff asked "what's wrong," and turned away and walked towards his house.  *Id.*  Then, upon noticing that

a police car was blocking the street and forcing oncoming cars onto a part of his property that ended in an unlit lake, the plaintiff asked the officers if he could direct traffic to avoid possible accidents. *Id.* The plaintiff was told "[l]eave now or I'll arrest you." *Id.* The plaintiff responded by asking why he would be arrested, and he was again told to leave. *Id.* Turning towards his house, the plaintiff then asked for an officer's badge number and if he could speak with a superior officer. *Id.* The officers told the plaintiff that if he continued to say anything, he would be arrested. *Id.* At this point the plaintiff turned his back and started walking home, but he was arrested before he reached his house. *Id.*

In finding no arguable probable cause to arrest the plaintiff in *Davis* for disorderly conduct, the panel noted that the plaintiff did not physically interfere or obstruct the deputies, did not get closer than ten feet from the traffic stop, never made any physical threats towards the officer, never sought to incite violence, never told the deputies to get off his property, and approached the deputies in a respectful manner without yelling. *Id.* at 766. By an officer's admission, the plaintiff's conduct merely caused the officers to walk away from the traffic stop to see what the plaintiff wanted. *Id.*

It is readily inferred from *Davis* that Morris' standing up in violation of Johnson's instructions to remain seated, without more, does not constitute arguable probable cause to arrest Morris for disorderly conduct. *Davis*, 451 F.3d at 767. However, the Arrest Affidavit and the allegations in the Complaint consistent with the Arrest Affidavit[3] show that Morris did more than

_____

[3] "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see also Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Accordingly, any conflict between Morris' allegations in the Complaint and the Arrest Affidavit attached to the Complaint must be resolved in favor of the Arrest Affidavit. *See Crenshaw v. Lister*,

(continued...)

merely disobey Officer Johnson by standing up.  According to the Arrest Affidavit, Morris "seem[ed] intoxicated and very uncooperative," "began yelling . . . and bec[ame] very disruptive" while sitting down, became "more aggressive" upon standing up, and refused to sit and calm down when requested to do so.  (Doc. No. 1 at 8.)  It is unclear from the Complaint how loudly Morris yelled, how far Morris was from Johnson and Owens when he "interjected" and "stood up," and whether there were any bystanders to the incident involving Morris, Johnson, and Owens.  (*Id.* ¶¶ 6-9, at 8.)  In any case, Morris' "yelling" and increasingly "disruptive" and "aggressive" behavior presented more than a de minimis interference with Johnson's lawful duties, and thus, Johnson had arguable probable cause to arrest Morris for disorderly conduct.  *Compare Gold*, 121 F.3d at 1446 (finding arguable probable cause to arrest a bank patron for disorderly conduct who "twice used profanities in a loud voice, in a public place, and in the presence of others"), *and White*, 330 So. 2d at 5-6 (determining that shouting in police station loudly enough to affect the functioning of the station may constitute disorderly conduct regardless of the words uttered), *with Davis*, 451 F.3d at 766 (finding no arguable probable cause where the plaintiff's actions merely bothered officers to walk away from a traffic stop to see what the plaintiff wanted).

Because Johnson had arguable probable cause to arrest Morris for disorderly conduct, Johnson is entitled to qualified immunity on the Section 1983 claims for an unlawful and retaliatory arrest in violation of Morris' First and Fourth Amendment rights.  *See Redd*, 140 F.3d at 1383 ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for

_____

(...continued)
556 F.3d 1283, 1292 (11th Cir. 2009) ("Because the officers' police reports attached to the complaint refute [the plaintiff's] conclusory and speculative allegation about what the officers saw, we do not credit [the plaintiff's] allegation.").

disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").   Accordingly, Counts I and II of the Complaint will be dismissed.

## II.  Count III: Violation of Fourteenth Amendment Rights to Substantive Due Process and Equal Protection

In Count III of the Complaint, Morris asserts that Johnson violated his Fourteenth Amendment rights to "liberty with due process of law" and equal protection by failing to "properly investigate the facts surrounding the situation [of Morris' baggage], the trespass citation, or the charge of disorderly conduct."  (Doc. No. 1 ¶ 14.)  Both Morris' due process and equal protection claims are insufficiently pled and should be dismissed.

### A.  Due Process

The legal basis of Morris' claim for a deprivation of "liberty with[out] due process of law" is unclear.  To the extent he seeks relief for an unlawful arrest, the claim is duplicative of his Fourth Amendment claim discussed *supra* part I, as the Fourteenth Amendment incorporates the Fourth Amendment to state actors.  *See supra* note 2.  Otherwise, the only conceivable basis for relief is the substantive component of the Due Process Clause.

Officials acting under the color of state law violate the substantive component of the Due Process Clause when their conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," as a Section 1983 substantive due process claim must not be used "as a 'font of tort law' to convert state tort claims into federal causes of action."  *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d

1300, 1305 (11th Cir. 2003).  Although there is no precise test for determining what is "conscious shocking" in a constitutional sense, merely negligent acts are not enough.  *Id.*  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *Id.* (citations omitted).

Morris does not plead facts plausibly establishing that Johnson's conduct was "conscious shocking" in a constitutional sense.  Morris asserts that Johnson ignored him while Johnson was speaking with Owens.  (*Id.* ¶ 8.)  Johnson also allegedly failed to acknowledge Morris' claim for stolen baggage and planned to write Morris a trespass citation despite Morris' right to be in the bus terminal.  (*Id.* ¶¶ 6-7, at 8.)  When Morris became increasingly "disruptive" and "aggressive," Johnson arrested Morris for disorderly conduct.  (*Id* at 8.)  These allegations, without more, do not permit a plausible inference that Johnson intended to harm Morris in a "conscious shocking" manner.  *See Lewis*, 523 U.S. at 853 (finding that high-speed police chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability for "conscious shocking" behavior in violation of the right to substantive due process).  Accordingly, Morris has not sufficiently pled a Section 1983 claim for a violation of substantive due process.

### B.  Equal Protection

The allegations in the Complaint also fail to state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection under the laws, "which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  In order to assert a claim under the Equal Protection Clause of the Fourteenth Amendment, Morris must allege that: (1) he was treated

differently from similarly situated persons; and (2) the defendant unequally applied the laws for the purpose of discriminating against him. *GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). The similarly situated persons must be "prima facie identical [to plaintiffs] in all relevant respects." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). "[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.*

Although Morris alleges that "Officer Johnson did not properly investigate the facts surrounding the [missing baggage], the trespass citation, or the charge of disorderly conduct," (Doc. No. 1 ¶ 14), there are no allegations in the Complaint from which it may plausibly be inferred that Johnson intended to treat Morris differently than similarly situated persons. Absent such allegations, Morris' Section 1983 claim for a violation of the Equal Protection Clause must be dismissed as insufficiently pled.[4]

### III. Counts IV, V, VIII: Negligence and Battery against Johnson

In Counts IV and V of the Complaint, Morris claims that Johnson negligently failed to uphold state law and negligently investigated a "tourist complaint." (Doc. No. 1 ¶¶ 15-16.) In Count VIII, Morris contends that Johnson battered him by unlawfully arresting him. (*Id.* ¶ 18.) Johnson argues that these three claims must be dismissed pursuant to Florida Statute § 768.28, which provides that state and municipal employees cannot be held personally liable in tort for official

---

[4] For the same reasons, Morris has not asserted a "class of one" Equal Protection claim, as he does not allege facts plausibly establishing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

actions unless the actions were taken in bad faith or with a malicious purpose.  (Doc. No. 32 at 4.)

Morris concedes the correctness of this argument by Johnson.  (Doc. No. 34 at 2.)  Accordingly, the

claims against Johnson in Counts IV, V, and VIII of the Complaint will be dismissed.

## IV.  Counts IV - VIII: Tort Claims Against the City of Orlando

In Counts IV - VIII of the Complaint, Morris asserts claims for negligence, intentional

infliction of emotional distress, false imprisonment, and battery against the City of Orlando.  (Doc.

No. 1 ¶¶ 15-18.)  The City of Orlando moves to dismiss these claims for failure to comply with the

pre-suit notice requirements under Florida Statute § 768.28(6), which state as follows:

> (a) An action may not be instituted on a claim against the state or one of its agencies
> or subdivisions unless the claimant presents the claim in writing to the appropriate
> agency, and also, except as to any claim against a municipality or the Florida Space
> Authority, presents such claim in writing to the Department of Financial Services,
> within 3 years after such claim accrues and the Department of Financial Services or
> the appropriate agency denies the claim in writing; except that, if such claim is for
> contribution pursuant to s. 768.31, it must be so presented within 6 months after the
> judgment against the tortfeasor seeking contribution has become final by lapse of
> time for appeal or after appellate review or, if there is no such judgment, within 6
> months after the tortfeasor seeking contribution has either discharged the common
> liability by payment or agreed, while the action is pending against her or him, to
> discharge the common liability.

> (b) For purposes of this section, the requirements of notice to the agency and denial
> of the claim pursuant to paragraph (a) are conditions precedent to maintaining an
> action but shall not be deemed to be elements of the cause of action and shall not
> affect the date on which the cause of action accrues.

> (c) The claimant shall also provide to the agency the claimant's date and place of
> birth and social security number if the claimant is an individual, or a federal
> identification number if the claimant is not an individual. The claimant shall also
> state the case style, tribunal, the nature and amount of all adjudicated penalties, fines,
> fees, victim restitution fund, and other judgments in excess of $200, whether
> imposed by a civil, criminal, or administrative tribunal, owed by the claimant to the
> state, its agency, officer or subdivision. If there exists no prior adjudicated unpaid
> claim in excess of $200, the claimant shall so state.

(d) For purposes of this section, complete, accurate, and timely compliance with the requirements of paragraph (c) shall occur prior to settlement payment, close of discovery or commencement of trial, whichever is sooner; provided the ability to plead setoff is not precluded by the delay. . . . The failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section. . . .

Fla. Stat. § 768.28(6) (2010).

Notice to the agency and written denial of the claim are "conditions precedent to maintaining an action" against a state agency or subdivision. Fla. Stat. § 768.28(6)(b). Florida state and federal courts strictly construe this notice requirement and require plaintiffs to plead compliance with the notice provisions of Section 768.28(6). *E.g.*, *Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210, 212-13 (Fla. 1983); *Smith v. Rainey*, No. 8:09-CV-1628-T-27MAP, --- F. Supp. 2d ----, 2010 WL 4118096, at *5 (M.D. Fla. Sept. 30, 2010); *see also Fletcher v. City of Miami,* 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008) ("A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to allege compliance with the notice requirement." (internal citations omitted)).

The pre-suit notice provisions of Section 768.28(6) apply to claims against the City of Orlando because it is a municipality and thus a subdivision of the state of Florida. *See* Fla. Stat. § 768.28(2) (defining "state agencies or subdivisions" to include "municipalities"). Morris does not allege, and there is no evidence of record to suggest, that he complied with the statutory notice provisions under Section 768.28(6) prior to filing this suit against the City of Orlando. (Doc. No. 1.) Accordingly, the Court will dismiss the claims against the City of Orlando in Counts IV - VIII.

**V.  Count IV: Negligence for Failure to Uphold State Law**

Notwithstanding the grounds for dismissing Count IV discussed *supra* parts III and IV, both Johnson and the City of Orlando argue that Morris' claim in Count IV for negligent failure to uphold state law must be dismissed because they did not owe Morris a legal duty under the alleged facts. (Doc. No. 29 at 5-6; Doc. No. 32 at 5.)  The Court agrees.

The existence of a legal duty is a threshold matter of law and an essential element of a negligence claim. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010).  "[T]here is no common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals." *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985).  Similarly, "[a] law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole." *Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985).  Accordingly, "[t]he victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim." *Id.*  "A special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." *Pollock v. Fla. Dept. Of Highway Patrol*, 882 So. 2d 928, 935 (Fla. 2004).  For example, "a special duty is established when a police officer makes a direct representation to a plaintiff . . . that he or she will take a specified law enforcement action." *Id.* at 936 (citing *Brown v. City of Delray Beach*, 652 So. 2d 1150, 1153 (Fla. 4th DCA 1995)).

In claiming that Johnson and the City of Orlando negligently failed to uphold the law, Morris does not allege any facts plausibly establishing that Johnson or the City of Orlando assumed a

special duty of care by representing that a specific law enforcement action would be taken or by placing Morris within a "zone of risk" through their actions.  (Doc. No. 1 ¶ 15.)  Accordingly, the negligence claims in Count IV should be dismissed for want of a legal duty owed to Morris.

## VI.  Counts VI - VII: Intentional Infliction of Emotional Distress and False Imprisonment Against Johnson

In Count VI of the Complaint, Morris asserts that he has suffered severe emotional distress from his arrest in the bus terminal.  (Doc. No. 1 ¶ 17.)  In Count VII of the Complaint, Morris contends that Johnson falsely imprisoned him in the Orange County jail.  (Doc. No. 1 ¶ 18.)

Pursuant to Local Rule 3.01(a), a "movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request . . . ."  Although Johnson moves to dismiss "[a]ll Counts of the Complaint," (Doc. No. 32 at 1), he does not provide a memorandum of law supporting the dismissal of Counts VI and VII as required by Local Rule 3.01(a).  However, there is no plausible basis entitling Morris to relief on these claims contained in the complaint, as Morris was lawfully arrested under the alleged facts and Morris does not allege any facts pertaining to his imprisonment apart from his arrest.  *See supra* part I.  Therefore, the claims against Johnson in Counts VI and VII will be dismissed.

## VII.  Count IX: Malicious Prosecution

In Count IX of the Complaint, Morris asserts a claim for malicious prosecution.  (Doc. No. 1 ¶ 19.)  Morris does not plead which Defendants, if either, are allegedly liable for malicious prosecution.  The only allegation in support of the malicious prosecution claim is that Assistant State Attorney Lisa Acharekar filed a "No Information Notice" for the charges brought against Morris.

(*Id.*)  Johnson does not address the malicious prosecution claim in his Motion to Dismiss, (Doc. No. 32), and finding no allegations in the Complaint to the contrary, the Court does not construe Count IX to assert a malicious prosecution claim against Johnson.  To the extent the malicious prosecution claim is pled against the City of Orlando, the City argues that the claim should be dismissed because the City cannot be liable for malicious prosecution.  (Doc. No. 29 at 6.)

The state and its subdivisions are immune from claims based on malicious action, including malicious prosecution, pursuant to Florida Statute § 768.28(9)(a).  *Sebring Utils. Comm'n v. Sicher*, 509 So. 2d 968, 970 (Fla. 2d DCA 1987).  Accordingly, the claim for malicious prosecution in Count IX of the Complaint will be dismissed to the extent the claim is asserted against the City of Orlando.

<b>Conclusion</b>

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motions to Dismiss Complaint by Defendants City of Orlando and Finley Johnson (Doc. Nos. 29, 32) are **GRANTED**. All Counts in the Complaint against the City of Orlando and Finley Johnson are **DISMISSED without prejudice.**

Plaintiff Larry L. Morris, Jr. has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order.  The failure to comply with the provisions of this Order may result  in dismissal of this case without prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 9, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

-18-

Copies furnished to:

Counsel of Record
Larry L. Morris, Jr.